```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| CAMEO, LLC, | ) |
| | ) |
|     Plaintiff, | )   Civil No. 5:14-cv-256-JMH |
| | ) |
| v. | ) |
| | )   **MEMORANDUM OPINION** |
| TECHNI-COAT INTERNATIONAL, | )         **AND ORDER** |
| N.V./S.A., | ) |
| | ) |
|     Defendant. | ) |

                                            **\*\*\*\***

## I.  INTRODUCTION

This matter is before the Court upon Plaintiff Cameo, LLC's Motion for Leave to File a Fifth Amended Complaint. [DE 73]. Akzo Nobel Paints Belgium, N.V./S.A. ("AN Paints"), as successor by merger to named Defendant Techni-Coat International, N.V./S.A. ("Techni-Coat"), has filed a Response in Opposition thereto, and Cameo has submitted a Reply, rendering this matter ripe for the Court's review. [DE 77, 79]. For the reasons stated herein, Cameo's Motion is hereby **GRANTED IN PART AND DENIED IN PART.**

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2008, Cameo entered into a Product Supply Agreement with Expert Management, doing business as ICI Imagedata

("Imagedata").[1] [DE 73-2]. Specifically, Cameo agreed to purchase certain types of printing products from Imagedata, which were identified in Schedule B of the Agreement.[2] [*Id.* at 15, 23]. The products in question were part of a three-dimensional printing process called Pictaflex, which was owned by Imagedata's parent company, Intervening Defendant Imperial Chemical Industries, PLC ("ICI").[3] [*Id.* at 14]. In exchange, Imagedata permitted Cameo to re-sell the products in question to Strikeforce Bowling. [*Id.* at 14-15, 22]. Thus, the Agreement essentially designated Cameo as a non-exclusive distributor of select Pictaflex products. [*Id.*]. ICI and Strikeforce executed a supplemental License Agreement that same day, thereby allowing Strikeforce to utilize the Pictaflex technology. [*Id.* at 14-15].

The term of the Agreement began on April 1, 2008. [*Id.* at 22]. The parties agreed that the Agreement would "continue in force for a period of three years and thereafter unless or until terminated by either party giving the other party at any time not less than three months written notice to expire on or at any time

---

[1] The Product Supply Agreement, coupled with the ICI-Strikeforce License Agreement, discussed *infra*, supplanted the Pictaflex Distributor Agreement of December 14, 2006. [DE 73-2 at 3].
[2] The parties amended the Product Supply Agreement on April 22, 2008. [DE 73-2 at 12-26]. The amendments did not impact the provisions discussed in this opinion. [*Id.*]. For the sake of clarity and consistency, the Court will cite to the amended version of the Agreement. [*Id.*].
[3] In the Proposed Fifth Amended Complaint, Cameo briefly refers to Imagedata as a defendant. [DE 73-1 at p. 2]. However, the substantive counts make no mention of Imagedata, leading the Court to conclude that this is a mere typo. [*Id.* at 7-9].

2

after the end of that period." [*Id.* at 18]. Imagedata further promised that:

> neither it nor any of its affiliates will, during the term of this Agreement *or for a year after the termination of this Agreement, except in the event of termination by [Imagedata] for cause*, sell (or solicit the sale of) Products to Strikeforce Bowling LLC (or its affiliates) directly or through any person or entity other than [Cameo]. [Cameo] agrees that neither it nor any of its affiliates will during the term of this Agreement, directly or indirectly, sell (or solicit the sale) any products to Strikeforce Bowling LLC (or its affiliate) competitive with the Products.

[*Id.* at 20].

In January 2008, just three months before Cameo and Imagedata executed the Agreement, Dutch multinational corporation Akzo Nobel, N.V. acquired ICI and its subsidiaries. [DE 72]. Later that year, after the Agreement took effect, Akzo Nobel transferred the Pictaflex technology to Techni-Coat, another of its subsidiaries. [*Id.*]. As a result, Techni-Coat became responsible for the supply of Pictaflex products to Cameo under the terms of the Agreement. [*Id.*].

On July 6, 2010, Cameo's sole member, Nicholas Herbert-Jones, e-mailed Techni-Coat's Managing Director, Marc Lafaille, to express concerns about Lafaille's recent meeting with Strikeforce personnel. [DE 61-1 at 13-14]. On July 19, 2010, Lafaille sent Herbert-Jones a letter, declaring Techni-Coat's intent to terminate its business relationship with Cameo, effective March

3

30, 2011. [*Id.* at 12]. Herbert-Jones then sent Lafaille another email on August 3, 2010, confirming receipt of the letter and asking him whether Techni-Coat had directly sold Pictaflex products to Strikeforce.[4] [*Id.* at 13]. The record contains no response from Lafaille. [*Id.*].

On June 26, 2014, Cameo filed this civil action against an Akzo Nobel subsidiary named Akzo Nobel Coatings, Inc. ("AN Coatings"), asserting claims for breach of contract and breach of the duty of good faith and fair dealing. [DE 1]. Cameo later sought, and received, leave to amend its complaint so that it could name Akzo Nobel, Inc., rather than AN Coatings, as Defendant in this action.[5] [DE 1, 27, 46]. The Court subsequently granted Cameo further leave to amend its complaint, thereby allowing Cameo to substitute Techni-Coat for Akzo Nobel, Inc. [DE 58, 61].

In Spring 2016, the parties conducted a Rule 26(f) Conference. [DE 70]. Defense counsel reported that Techni-Coat no longer exists as a separate legal entity, having merged with AN Paints in 2014. [*Id.* at 2]. Moreover, he suggested that Techni-Coat was not the proper defendant to this action. In an effort to identify

---

[4] Herbert-Jones also sent Lafaille an email on July 27, 2010, asking whether Lafaille had received his email of July 6, 2010. [DE 61-1 at 13-14]. Although Herbert-Jones sent this email after Lafaille sent the termination letter, Herbert-Jones apparently had not received it yet. [*Id.*].

[5] Cameo actually substituted Akzo Nobel, Inc. for AN Coatings in its Third Amended Complaint. [DE 46]. Cameo's prior attempts to amend its complaint were prompted by changes in counsel, as well as a need to protect confidential information. [DE 1, 27].

4

the entity involved in the breach of the Agreement without disclosing Techni-Coat's confidential business information, counsel for both parties decided to send a third-party subpoena *duces tecum* to Strikeforce. [DE 70 at 2-3]. After reviewing the documents obtained from Strikeforce, defense counsel reportedly suggested that Cameo substitute Soliant, LLC, another Akzo Nobel subsidiary, as Defendant in this action. [DE 73]. Strikeforce documents indicate that Soliant acquired the Pictaflex technology from Techni-Coat in 2011, then merged with AN Coatings. [DE 72 at 3].

Cameo now seeks leave to amend its complaint a fifth time. Specifically, it wishes to assert additional claims for unjust enrichment and tortious interference with a contract and business relations against AN Paints, add AN Coatings as a defendant, and clarify the nature of its existing breach of contract claim. The Court will address each of these requests in turn.

### III. ANALYSIS

A. *Addition of Claims*

i. **Applicability of the Relation-Back Doctrine**

"An amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—

5

or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "In determining whether the new claims arise from the same 'conduct, transaction, or occurrence,' [the court's] analysis is guided by 'whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading.'" *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 375 (6th Cir. 2015) (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007)). "This standard is usually met if there is an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong." *Id.* (internal quotations omitted).

Throughout this litigation, Cameo alleged that an Akzo Nobel-related entity breached the Agreement before *and* after its termination. [DE 1]. Specifically, Cameo asserted that the Akzo Nobel entity met with Strikeforce and negotiated the direct sale of Schedule B Pictaflex products just before terminating the Agreement. [*Id.* at p. 3-4, ¶ 10-11]. Cameo also complained that the Akzo Nobel entity disregarded its promise to refrain from selling Schedule B Pictaflex products to Strikeforce for one year following termination of the Agreement. [*Id.*].

6

In its Proposed Fifth Amended Complaint, Cameo alleges that Techni-Coat met with Strikeforce in May 2010 and "entered into an agreement with Strikeforce to supply Pictaflex products [not included in Schedule B] that otherwise would have been supplied by Cameo, whether through an expansion of the Product Supply Agreement or the procurement of the Pictaflex product through other channels." [DE 73-1, p. 7-8, ¶ 43-44]. As a result, Cameo complains that Techni-Coat was "unjustly enriched and retained a benefit conferred at Cameo's expense." [*Id.*]. The Proposed Fifth Amended Complaint also alleges that Techni-Coat used Cameo's relationship with Strikeforce "to negotiate the direct supply of a product that was not [] specifically enumerated in the schedule to the Product Supply Agreement was undertaken with the purpose of circumventing its Product Supply Agreement with Cameo." [*Id.* at p. 8, ¶ 46-47].

Although Cameo's additional claims focus on the sale of non-Schedule B Pictaflex products, they nevertheless arise out of the same occurrence or transaction that underlies its breach of contract claim. After all, both claims rely on the general assertion that Techni-Coat relied on Cameo's goodwill to schedule a meeting with Strikeforce in May 2010, then negotiated its own agreement with Strikeforce, and thereby excluding Cameo from the Pictaflex business.

7

Because this occurrence was set out, or at least attempted to be set out, in the original pleading, Techni-Coat was certainly "placed on notice that [it] could be called to answer for the allegations in the amended pleading." *Bledsoe*, 501 F.3d at 516 (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006) ("The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one."). Thus, Cameo's additional claims for unjust enrichment and tortious interference relate back to the filing of its initial complaint on June 26, 2014.

Nevertheless, AN Paints insists that leave to amend should be denied as futile, arguing that the relation-back doctrine does not save Cameo's additional claims from being time-barred by the applicable statute of limitations. *See Wells v. Bottling Grp., LLC*, 833 F. Supp. 2d 665, 670 (E.D. Ky. 2011) (concluding that "an amendment would be futile because the statute of limitations bars [the plaintiff's] 'amended' claim").

### ii. Statute of Limitations

Under Kentucky law, both unjust enrichment claims and tortious interference claims are subject to the five-year statute of limitations period set forth in KRS § 413.120. *Ellis v.*

*Arrowood Indem. Co.*, Civ. A. No. 12-140-ART, 2014 WL 2818458, at *7 (E.D. Ky. June 23, 2014) ("Multiple courts have identified § 413.120(1), for actions 'upon a contract not in writing, express or implied,' as the appropriate statute of limitations for unjust enrichment claims."); *Williams v. Owensboro Bd. of Educ.*, Civ. A. No. 4:07-CV-149-R, 2009 WL 248426, at *3 (W.D. Ky. Feb. 3, 2009) (applying KRS § 413.120(7)'s "catch-all" provision to tortious interference claims).

The statute of limitations "begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered."[6] *Hackworth v. Hart*, 474 S.W.2d 377, 379 (Ky. 1971). "The knowledge necessary to trigger the statute is two-pronged." *Wilson v. Paine*, 288 S.W.3d 284, 286-87 (Ky. 2009). "One must know: (1) he has been wronged; and (2) by whom the wrong has been committed." *Id.*

According to AN Paints, Cameo learned that Strikeforce might receive non-Schedule B products from another source long before the May 2010 meeting. [DE 77 at 1-2]. In support of this proposition, AN Paints points to an email that Cameo received from Imagedata on August 26, 2008, explaining that Strikeforce was having technical difficulties with the Pictaflex technology and

---

[6] Kentucky courts have cautioned against using the discovery rule in certain types of cases, none of which are involved here. *See, e.g., Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 56 (Ky. 2010) (observing that the discovery rule has not been extended to cases involving latent injuries, latent illnesses, or professional malpractice).

9

that Imagedata hoped to resolve these issues by directly supplying non-Schedule B products to Strikeforce. [DE 77-1]. AN Paints reasons that the statute of limitations on Cameo's unjust enrichment and tortious interference claims began running that same day, thereby requiring Cameo to file suit on or before August 26, 2013. Because Cameo's additional claims only relate back to the filing of the initial complaint on June 26, 2014, AN Paints concludes that the claims are time-barred.

This email merely demonstrates that Imagedata expressed an interest in directly supplying non-Schedule B products to Strikeforce and that Herbert-Jones communicated concerns about such an arrangement. It is unclear whether Imagedata ultimately proceeded with its proposal or found a solution more satisfactory to Herbert-Jones. Thus, the email did not necessarily put Cameo on notice that it had been injured. However, even if the email was sufficient in that regard, it would only have established that *Imagedata* wronged Cameo. There is no indication that Techni-Coat played a role in this exchange, as Akzo Nobel had not yet transferred the Pictaflex technology from ICI to Techni-Coat. Whatever wrongs Techni-Coat allegedly committed against Cameo must have occurred after the transfer of the Pictaflex technology, and thus, Cameo must have received notice after August 26, 2008.

In fact, Cameo alleges, upon information and belief, that it became aware of the alleged wrongs shortly after the May 2010

meeting between Techni-Coat and Strikeforce.[7] Assuming then that the statute of limitations began running in May 2010, Cameo would have had until May 2015 to assert its claims for unjust enrichment and tortious interference. Because Cameo filed its initial complaint on June 26, 2014, and because the additional claims for unjust enrichment and tortious interference relate back to the filing of the initial complaint, they are not time-barred. Thus, the Court cannot deny leave to amend on grounds of futility. Cameo's Motion for Leave to File a Fifth Amended Complaint is granted, to the extent that Cameo seeks to assert additional claims for unjust enrichment and tortious interference.

### B. Additional Parties

Under Federal Rule of Civil Procedure 15(c)(1)(C), "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied. Additionally, Rule 15(c)(1)(C) requires that, within the period provided by Rule 4(m) for serving the summons and complaint, "the party to be brought in by amendment (i) received

---

[7] Although the Proposed Fifth Amended Complaint focuses on the 2010 meeting, Cameo's accompanying Motion briefly refers to other transactions between an Akzo Nobel entity and Strikeforce that "significantly predate[]" the allegations discussed herein. [DE 73 at 4]. Because Cameo discovered evidence of such transactions in the recently-disclosed Strikeforce documents, and because there is no indication that Cameo should have discovered these transactions earlier through due diligence, it cannot be charged with earlier notice of such transactions for statute of limitations purposes.

such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

The United States Court of Appeals for the Sixth Circuit has held that the relation-back provision of Rule 15(c)(1)(C) simply allows for the substitution of parties or correction of misnomers. *Asher v. Unarco Mat. Handling*, 596 F.3d 313, 319 (6th Cir. 2010); *see also In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991) ("An amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.").

According to Cameo, Strikeforce documents revealed that Akzo Nobel transferred the Pictaflex technology from Techni-Coat to Soliant shortly after the termination of the Agreement. [DE 73, 79]. Thus, Cameo believes that Soliant may be liable for some of the post-termination Pictaflex sales to Strikeforce. [*Id.*]. Because Soliant has since merged with AN Coatings, Cameo seeks to add AN Coatings as a defendant in this action. However, Cameo clearly indicates that it is not requesting a substitution of parties or correction of misnomers. Rather, it seeks to make this amendment while simultaneously retaining its claims against AN Paints. [*Id.*]. Because Cameo's request essentially creates new

12

causes of action that do not relate back to the filing of the initial complaint, it cannot avail itself of Rule 15(c)(1)(C). *See Asher*, 596 F.3d at 319. Cameo's Motion for Leave to File a Fifth Amended Complaint is therefore denied, to the extent that it seeks to add AN Coatings as a defendant while retaining its claims against AN Paints.[8]

### *C. Clarification of Breach of Contract Claim*

As a general matter, Federal Rule of Civil Procedure 15(a)(2) provide that courts "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Krupski*, 560 U.S. at 552-53 (highlighting the distinction between the "mandatory nature of the inquiry for relation back under Rule 15(c)" and Rule 15(a)'s discretionary standard). "Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008).

Cameo seeks to clarify that its breach of contract claim pertains to conduct occurring both before and after the termination

---

[8] The Court must clarify that this ruling does not preclude Cameo from actually substituting AN Coatings for AN Paints in this action, although such a maneuver would likely be fatal to Cameo's unjust enrichment and tortious interference claims. After all, those additional claims are predicated on conduct that occurred before the termination of the Agreement, and thus, before Soliant had control of the Pictaflex technology.

13

of the Agreement. Although the Court believes that Cameo expressed such an intent in previous versions of the complaint, it sees no reason why Cameo cannot further describe the basis for its breach of contract claim. AN Paints makes no objection to this particular request. Because there is no indication that Cameo seeks such an amendment in order to delay the case or create prejudice for AN Paints,[9] the Court will grant Cameo's Motion for Leave to File a Fifth Amended Complaint, to the extent that it seeks to simply clarify the nature of its existing breach of contract claim. *Seals*, 546 F.3d at 770.

### IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Plaintiff Cameo, LLC's Motion for Leave to File a Fifth Amended Complaint [DE 73] be, and is, hereby **GRANTED IN PART** and **DENIED IN PART**. Cameo may amend its complaint to assert additional claims for unjust enrichment and tortious interference against AN Paints and clarify the nature of its existing breach of contract claim. However, Cameo is not permitted to add AN Coatings as a defendant in this action while retaining its claims against AN Paints.

---

[9] Discovery has not yet commenced in this case. Thus, the proposed amendment may clarify the nature and extent of discovery needed on the breach of contract claim, thereby streamlining the discovery process.

14

**IT IS FURTHER ORDERED** that Cameo shall **file a Fifth Amended Complaint** that is consistent with the terms of this Memorandum Opinion and Order **within ten (10) days** of the date of entry of this Order.

This the 21st day of February, 2017.



Signed By:
_Joseph M. Hood_
Senior U.S. District Judge